UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                           :
AHMED BABUL and NAFIEW AHMED,                              :
                                                           :
                              Plaintiffs                   :   **MEMORANDUM DECISION &**
                                                           :   **ORDER**
            - against -                                    :
                                                           :   17-cv-5993 (BMC)
DEMTY ASSOCIATES LIMITED                                   :
PARTNERSHIP, FAHIM ROUFAIL,                                :
ANDREW ROUFAIL, DANIEL ROUFAIL,                            :
HILLCREST OWNERS ASSOC. INC.,                              :
BOARD OF HILLCREST OWNERS                                  :
ASSOC., REZAUL JAMEE, FAYEZULLA                            :
BABUL, MR. ALAM, SUBARMA                                   :
SENGUPTA and CHANDAN SENGUPTA,                             :
                                                           :
                              Defendants.                  :
----------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiffs Ahmed Babul and Nafiew Ahmed, father and son, respectively, brought this lawsuit under the Fair Housing Act, the New York State Human Rights Law, and the New York City Human Rights Law. Plaintiffs allege that defendants discriminated against Ahmed Babul on the basis of his disability and age by refusing to sell Nafiew Ahmed either of two apartment units for his father. Plaintiffs also claim that defendants breached the warranty of habitability implied in the residential lease for the apartment unit that Ahmed Babul rented.

Plaintiffs' claims are generally directed at three sets of defendants: (1) the "Demty Defendants" (Demty Associates Limited Partnership, Fahim Roufail, Andrew Roufail, and Daniel Roufail), who initially owned the disputed units; (2) the "Hillcrest Defendants" (Hillcrest Owners Association, Inc., Board of Hillcrest Owners Association, Rezaul Jamee, Fayezulla Babul, and Shake Ahmed (a/k/a "Mr. Alam")), who, along with Fahim and Andrew Roufail,

comprised the cooperative corporation for the building containing the units; and (3) the "Senguptas" (Subarna Sengupta and Chandan Sengupta), who eventually purchased one of the units.

The Hillcrest Defendants have moved for summary judgment as to plaintiffs' Fair Housing Act ("FHA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL") claims. The Senguptas have also moved for summary judgment on the breach of the implied warranty of habitability claim.[1] Plaintiffs have not opposed either motion but the Court has reviewed the record to determine if the motions are meritorious. For the reasons that follow, both motions are granted.

## DISCUSSION

A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

"Once the moving party demonstrates that there are no genuine issues of material fact, the nonmoving party 'must come forth with evidence sufficient to allow a reasonable jury to find in [its] favor.'" Id. (quoting Brown v. Henderson, 257 F.3d 246, 252 (2d Cir.2001)); see also Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002). "In determining whether the moving party is entitled to judgment as a matter of law, the court must resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is

---

[1] The Demty Defendants previously moved for summary judgment, which was granted in part and denied in part. Their motion for reconsideration of the partial denial was denied.

2

sought." Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The Hillcrest Defendants and the Senguptas have each submitted Local Rule 56.1 statements, which contain the material facts they contend are undisputed. Plaintiffs did not oppose either motion, and as a result, they have not contested any of these facts. However, several of the purportedly undisputed facts in the Hillcrest Defendants' statement are not supported by citations to admissible evidence. Accordingly, the Court accepts only those statements in defendants' rule 56.1 submission that are supported by evidence in the record. See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003).

In conjunction with Demty Associates Limited Partnership's ("DALP") sale of the building and underlying property located at 70-35 Broadway in Jackson Heights, New York to Hillcrest Owners Association, Inc. ("Hillcrest"), DALP and Hillcrest executed a Cooperative Offering Plan, pursuant to which Hillcrest sold its shares in the building to DALP in order to fund its purchase of the building. Under the Offering Plan, the building's then-current tenants were offered the opportunity to purchase shares of stock that were allocated to the apartments they leased.

DALP is defined as the "Sponsor" in the Offering Plan. At closing, the Sponsor (or financially responsible individuals or entities produced by the Sponsor) had to acquire all "Unsold Shares." "Unsold Shares" are defined as "any shares not subscribed to and fully paid for prior to closing."

The Holders of Unsold Shares have special rights under the Offering Plan. Specifically, "Unsold Shares . . . may be transferred, and the appurtenant Proprietary Lease assigned, or the

3

Apartment to which they are allocated subleased, without the consent of the Board of Directors, the Tenant-Shareholders, or the Managing Agent." The Offering Plan reasserts that "[t]hese special rights . . . include the right to assign the shares allocated to the Apartment, or sublease the Apartment without the consent of [Hillcrest], and without having to pay transfer fees or charges imposed by [Hillcrest]. Holders of Unsold Shares other than Sponsor will also have the same rights as the Sponsor to sell the shares allocated to their Apartments."

The Offering Plan also references the restatement of these rights in the building's Proprietary Lease. Specifically, under a section titled "Subletting Apartment and Sale of Shares," the Proprietary Lease provides: "Neither the subletting of the apartment from time to time nor the assignment of this lease by the holder of Unsold Shares allocated to the apartment nor the posting of signs in connection with such subletting, assignment or sale shall require the consent of the Directors or shareholders." The Proprietary Lease further states that "Unsold Shares retain their character as such (regardless of transfer) until an Individual purchases same for use and occupancy by himself or a member of his family." The Offering Plan similarly provides that Unsold Shares cease to be Unsold Shares when a Holder of Unsold Shares or a person related by blood or marriage to the Holder of Unsold Shares takes occupancy of the apartment as a bona fide resident.

The Demty Defendants held apartments D-23 and E-7 as "Unsold Shares." The Demty Defendants sold apartment E-7 to an unrelated third party on May 18, 2017. The Demty Defendants sold apartment D-23 to the Senguptas on October 6, 2015. At that time, plaintiff Ahmed Babul was the tenant in D-23. Because apartment D-23 was not for occupancy by the Senguptas or their families, the Senguptas remain Holders of Unsold Shares. Subarna Sengupta

4

is the landlord and current owner of apartment D-23. The Demty Defendants did not seek the Hillcrest Defendant's consent to sell either of these apartments.

On May 4, 2018, plaintiff Ahmed Babul filed a Verified Petition in Support of an Order to Show Cause in the Civil Court of the City of New York, County of Queens: Housing Part C. That document contains the following allegations concerning apartment D-23: "broken cabinet, lead paint, stove not working, window broke, mouse hold everywhere, dirty everything, bathroom flush not working, bathtub very bad, whole apt is dirty." Apartment D-23 was inspected on May 21, 2018. Following a conference with the parties, the housing court issued a Consent Order and Notice of Violation, which is dated May 30, 2018. The Consent Order required the Senguptas to correct all violations listed on an inspection report reviewed by the housing court or be subject to daily financial penalties. Plaintiff Ahmed Babul, the Senguptas' attorney, and the Honorable Lydia Lai J.H.C signed the Consent Order.

I.     **The Hillcrest Defendants' Motion for Summary Judgment**

The Hillcrest defendants move for summary judgment on plaintiffs' FHA, NYSHRL, and NYCHRL claims.

Under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), plaintiffs must establish a *prima facie* case of housing discrimination. See Mancuso v. Douglas Elliman LLC, 808 F. Supp. 2d 606 (S.D.N.Y. 2011). To do so, a plaintiff must show "(1) that they are members of a protected class; (2) that they sought and were qualified to rent or purchase the housing; (3) that they were rejected; and (4) that the housing opportunity remained available to other renters or purchasers." Mitchell v. Shane, 350 F.3d 39, 47-48 (2d Cir. 2003). Defendants must then assert a legitimate, nondiscriminatory rationale for the challenged decision. Id. at 39. If defendants are successful in so showing, then "the burden shifts back to

the plaintiff to demonstrate that discrimination was the real reason for the defendant's action." Id.

The FHA "applies broadly to '*any* notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates' a discriminatory preference on prohibited grounds." United States v. Space Hunters, Inc., 429 F.3d 416, 424 (2d Cir. 2005) (citing 42 U.S.C. § 3604(c)). Further, the statute's reach is not limited "to statements that directly affect a housing transaction." Id

Here, the building's governing documents – specifically, the Offering Plan and the Proprietary lease – make clear that the Holders of Unsold Shares may sell those Unsold Shares without the approval or consent of the Hillcrest Defendants. The Demty Defendants held the shares allocated to apartments D-23 and E-7 as "Unsold Shares." As a result, the Demty Defendants were not required to consult the Hillcrest Defendants before selling the shares allocated to either of those units.

Although the Demty Defendants were not required to consult the Hillcrest Defendants, plaintiffs nevertheless allege in the complaint that they did. As noted above, even indirect statements made to affect a housing sale could still be actionable under the FHA – thus, had this type of informal consultation occurred, plaintiffs might have a leg to stand on. However, plaintiffs have not brought forward any evidence suggesting that the Demty Defendants consulted with the Hillcrest Defendants, and the Hillcrest Defendants' affidavits state that the Demty Defendants did not consult them about either the sale of apartment D-23 or apartment E-7. Although plaintiff's counsel seems to be of the view that allegations in a complaint are sufficient to raise issues of fact, that is wrong. See St. Pierre v. Dyer, 208 F.3d 394, 404 (2d Cir.

2000). Therefore, the Hillcrest Defendants are entitled to judgment as a matter of law on plaintiffs' federal, state, and city housing discrimination claims.

## II. The Senguptas' Motion for Summary Judgment

The Senguptas move for summary judgment on the breach of the implied warranty of habitability, arguing that this claim is barred by the doctrine of res judicata.[2]

Under New York law, every residential lease contains an implied warranty of habitability, which covenants that "(1) that the premises are fit for human habitation, (2) that the premises are fit for the uses reasonably intended by the parties, and (3) that the occupants will not be subjected to conditions that are dangerous, hazardous or detrimental to their life, health or safety." Newkirk v. Scala, 935 N.Y.S.2d 176, 177-78 (N.Y. App. Div. 2011) (internal quotation marks and citations omitted). The implied warranty is implicated if the premises contain conditions that "materially affect the health and safety of tenants," or if the premises contain deficiencies that "in the eyes of a reasonable person deprive the tenant of those essential functions which a residence is expected to provide." Id. at 178 (internal quotation marks and citations omitted).

"Under the doctrine of res judicata, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" EDP Med. Computer Sys., Inc. v. United States, 480 F.3d 621, 624 (2d Cir. 2007) (quoting St. Pierre v. Dyer, 208 F.3d 394, 399 (2d Cir. 2000)). "Thus, the doctrine bars 'later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4)

---

[2] Plaintiffs withdrew their claim for breach of the implied warranty of habitability against the Hillcrest Defendants. The Court dismissed this claim as to the individual Demty Defendants, Fahim Roufail, Andrew Roufail, and Daniel Roufail, but not as to DALP.

7

involving the same cause of action.'" Id. (quoting In re Teltronics Servs., Inc., 762 F.2d 185, 190 (2d Cir. 1985)). Res judicata serves several important interests "for both the litigants and for society," because it "reliev[es] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." Id. (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)).

The Court finds that each factor of res judicata is satisfied here. Turning to the first factor, the Consent Order constitutes a final judgment on the merits. See Monahan, 214 F.3d at 286 ("The entry of a consent judgment has a preclusive effect not simply because it is an exercise of judicial power entitled to appropriate respect, but because of the policy favoring finality of judgments.") (citing 1B J. Moore, Moore's Federal Practice, ¶ 0.409(5), p. 1030 (2d ed. 1965) ("[A consent] judgment is not an *inter partes* contract; the court is not properly a recorder of contracts, but is an organ of government constituted to make judicial decisions and when it has rendered a consent judgment it has made an adjudication.")).

As for the second factor, the Queens housing court is a court of competent jurisdiction. Plaintiff, as a tenant, could rightfully bring an action against his landlord in housing court, and that court could properly issue the Consent Order.

With respect to the third factor, plaintiffs' lawsuit involves the same parties as the Consent Order – plaintiff Ahmed Babul and defendant Subarna Sengupta (and their privies, plaintiff Nafiew Ahmed and defendant Chandan Sengupta, respectively). See Monahan v. New York City Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000) (noting that literal privity is not required, and instead, "a party will be bound by the previous judgment if his 'interests were adequately represented by another vested with the authority of representation'").

Finally, as to the fourth factor, the instant lawsuit and the Consent Order involve the same cause of action. "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." NLRB v. United Technologies Corp., 706 F.2d 1254, 1260 (2d Cir. 1983) (citations omitted).

In the complaint, plaintiffs allege that the conditions in apartment D-23 "are not safe, livable, and clean," and that these "conditions include broken windows, broken locks, peeling paint, broken kitchen cabinet, and mold." Plaintiffs further allege that the Senguptas own apartment D-23, the Senguptas had actual knowledge of the conditions, and have "refused to rectify the situation, despite being given notice of the same." The allegations contained in the housing court documents are virtually identical, if not more extensive.

The Consent Order indicates that apartment D-23 was inspected, and pursuant to an inspection report, certain violations were found to exist in that unit. This investigation into D-23 concerned precisely the same offenses at issue in the instant lawsuit – namely, whether a discrete set of conditions existed in apartment D-23 and whether those conditions require the landlord's attention. Thus, the Consent Order rests on the exact same set of facts as the instant lawsuit, and the Court would rely on similar evidence to reach a decision on the merits as to plaintiffs' implied warranty of habitability claim here. As a result, the doctrine of res judicata bars plaintiffs' claim in this case as against the Senguptas.

## CONCLUSION

The Hillcrest Defendants' motion for summary judgment [53] and the Senguptas' motion for summary judgment [54] are GRANTED.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       September 3, 2018