UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                           :

AHMED BABUL and NAFIEW AHMED,     :
                                           :

                 Plaintiffs     :

                                           :

             - against -     :

                                           :   **MEMORANDUM DECISION &**
                                         :   **ORDER**
DEMTY ASSOCIATES LIMITED     :
PARTNERSHIP, FAHIM ROUFAIL,     :
ANDREW ROUFAIL, DANIEL ROUFAIL,   :   17-cv-5993 (BMC)
SUBARMA SENGUPTA, and CHANDAN   :
SENGUPTA,     :
                                           :

                 Defendants.     :

                                         :
------------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiffs Ahmed Babul and Nafiew Ahmed – father and son, respectively – brought this lawsuit alleging that three different groups of defendants discriminated against Ahmed Babul on the basis of his disability and age in violation of the Fair Housing Act ("FHA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL") when they refused to sell Nafiew Ahmed either of two apartment units for his father. Plaintiffs also allege that defendants breached the warranty of habitability implied in the residential lease for the apartment unit that Ahmed Babul rented from defendants.

Only two groups of defendants remain in the case – the "Demty Defendants" (Demty Associates Limited Partnership ["DALP"], Fahim Roufail, Andrew Roufail, and Daniel Roufail), who initially owned the disputed units; and the "Senguptas" (Subarna Sengupta and Chandan Sengupta), who eventually purchased one of the units. Some of the claims against them have previously been dismissed, and both the Demty defendants and the Senguptas have moved for

summary judgment on the claims that are left, with the exception of one.[1]  For the reasons

discussed below, both motions are granted.

## BACKGROUND

The Demty defendants' motion for summary judgment concerns apartment E-7.  The

Demty defendants did not submit a Local Rule 56.1 statement with their opening motion but they

did attach one to their reply brief once plaintiffs noted their failure to comply with the local rule.

That was insufficient because plaintiffs did not have an opportunity to submit a counter-

statement to oppose the facts that the Demty defendants claim are undisputed.  The Court will,

however, waive this requirement because the relevant, uncontested facts are fully set forth in the

parties' moving papers.  See Pensiero v. Bouchard Transp. Co., No. 07 CIV. 3536, 2007 WL

3353481, at *4 (E.D.N.Y. Nov. 10, 2007).  Those facts are as follows.

Ahmed Babul previously commenced in state court a small claims action against DALP.

On December 18, 2015, DALP offered to sell apartment E-7 to Nafiew Ahmed for $220,000 in

exchange for Ahmed Babul withdrawing with prejudice his small claims action.  DALP sent a

proposed contract of sale to Nafiew Ahmed's real estate attorney, Gordon Chang.  The proposed

contract of sale required a contract deposit of $20,000 payable at the time of signing the contract

of sale, with the remainder of the purchase price due at closing.  Nafiew Ahmed signed the

proposed contract of sale and returned it to Andrew Roufail, but Nafiew Ahmed never paid the

contract deposit.

---

[1] The Demty defendants are incorrect that the sole remaining issue in the complaint as to them is whether their offer to sell apartment E-7 to plaintiffs violated the FHA, NYSHRL, and NYCHRL.  The Demty defendants previously moved for summary judgment on plaintiffs' implied warranty of habitability claim.  The Court granted that motion as to the individual Demty defendants but denied it as to DALP.

DALP separately sent to Mr. Chang a stipulation of settlement pursuant to which Ahmed Babul would agree to vacate the default judgment entered against DALP in the small claims action and discontinue that matter with prejudice, and in exchange DALP would "offer[] to [Nafiew Ahmed] an opportunity to purchase an apartment" in the building. Neither Ahmed Babul nor DALP signed the stipulation of settlement, and the Demty defendants eventually sold apartment E-7 to another purchaser for $229,000.

The Senguptas' motion for summary judgment concerns apartment D-23. The Senguptas have submitted a Local Rule 56.1 statement, which contains the material facts that they contend are undisputed. Some of the purportedly undisputed facts in this statement, however, are not supported by citations to admissible evidence or are argument rather than fact. Accordingly, the Court accepts the uncontested facts in the Senguptas' Local Rule 56.1 submission that are supported by evidence in the record. See Giannullo, 322 F.3d at 140. Those facts are as follows.

Plaintiff Ahmed Babul is plaintiff Nafiew Ahmed's father. Ahmed Babul does not have a job. On October 6, 2015, the Senguptas purchased from the Demty defendants apartment D-23. At that time, Ahmed Babul was the tenant living in apartment D-23, which he remained until July 2018. The Senguptas never sold apartment D-23 to either plaintiff, nor have the Senguptas offered to sell apartment D-23 to anyone other than plaintiffs (although it remains disputed whether they offered to sell apartment D-23 to plaintiffs). The Senguptas still own apartment D-23.

## DISCUSSION

A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Spinelli v. City of

New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "A fact issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003) (quoting Anderson, 477 U.S. at 248).

"Once the moving party demonstrates that there are no genuine issues of material fact, the nonmoving party 'must come forth with evidence sufficient to allow a reasonable jury to find in [its] favor.'"  Id. (quoting Brown v. Henderson, 257 F.3d 246, 252 (2d Cir.2001)); see also Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002).  "In determining whether the moving party is entitled to judgment as a matter of law, the court must resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought."  Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008) (citing Anderson, 477 U.S. at 255).

The FHA makes it unlawful for anyone to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of" either the buyer or renter, a person who will reside in the dwelling after it is sold or rented, or anyone who is associated with the buyer or renter.  42 U.S.C. § 3604(f)(1).  Although the FHA "uses the term 'handicap' rather than 'disability,'" the FHA's definition of "handicap" is "virtually identical to the definition of 'disability' in the Americans with Disabilities Act of 1990."  Rodriguez v. Vill. Green Realty, Inc., 788 F.3d 31, 39 (2d Cir. 2015).  Thus, the Court uses those terms interchangeably here.

The burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to claims of housing discrimination under the FHA, NYHRL, and NYCHRL.  See Haber v. ASN 50th St. LLC, 847 F. Supp. 2d 578, 585, 588 (S.D.N.Y. 2012).  Under that

4

framework, a plaintiff must first establish a prima facie case of discrimination. To make out a prima facie case of discrimination on the basis of a disability, a plaintiff must show four things:

> (1) that a person residing in or intending to reside in the dwelling after its sale or rental to the plaintiff had a handicap as defined in the FHA, (2) that the plaintiff sought and was qualified to purchase or rent the housing, (3) that he was rejected, and (4) that the rejection occurred in circumstances giving rise to an inference of discrimination on the basis of the handicap of the person residing or intending to reside with the plaintiff.[2]

Olsen v. Stark Homes, Inc., 759 F.3d 140, 152 (2d Cir. 2014).

"[O]nce a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to assert a legitimate, nondiscriminatory rationale for the challenged decision." Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003) (citing McDonnell Douglas, 411 U.S. at 802-03). "If the defendant makes such a showing, the burden shifts back to the plaintiff to demonstrate that discrimination was the real reason for the defendant's action." Id. (citing Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000).

"The ultimate burden of proof remains on the plaintiff to show that the defendants intentionally discriminated against him on a prohibited ground." Olsen, 759 F.3d at 152 (internal quotation marks, citations, and alterations omitted). "Summary judgment is appropriate if no reasonable jury could find that the defendant's actions were motivated by discrimination." Mitchell, 350 F.3d at 47 (citing Schnabel, 232 F.3d at 87).

## I.      Demty Defendants

The Demty defendants' second motion for summary judgment is, in effect, a motion for reconsideration of the Court's prior order denying summary judgment on these claims. The

---

[2] This articulation of the fourth prong of the test differs from the more common articulation found in Mitchell, 350 F.3d at 47, in which the Second Circuit stated that to establish a prima facie case for housing discrimination generally, a plaintiff must show four things: "(1) that they are members of a protected class; (2) that they sought and were qualified to rent or purchase the housing; (3) that they were rejected; and (4) that the housing opportunity remained available to other renters or purchasers."

Court will exercise its discretion to reconsider its earlier denial. See Nabisco v. Warner-Lambert Co., 32 F. Supp. 2d 690, 694–95 (S.D.N.Y. 1999) (citing Lavespere v. Niagara Machine & Tool Works, Inc., 910 F.2d 167, 185 (5th Cir. 1990); In re Mason, 191 B.R. 50, 55 (Bankr. S.D.N.Y. 1996)) ("[B]ecause the denial of a motion for summary judgment is an interlocutory order, the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.").

Plaintiffs argue that Nafiew Ahmed never paid the $20,000 contract deposit because the dismissal of the small claims action was a necessary precondition to the Demty defendants' obligation to even consider selling to Nafiew Ahmed apartment E-7. Nafiew Ahmed testified at his deposition that Andrew Roufail "sent a condition first to give a default judgment that [sic.] he would consider selling that apartment," which Nafiew Ahmed believed was "not a contract." The Demty defendants dispute this and argue that their obligation was not merely to consider selling to Nafiew Ahmed apartment E-7 once the small claims action was dismissed; rather, their obligation was to sell the apartment once the terms of the offer were accepted and fulfilled.

Upon reconsideration, the Court agrees with the Demty defendants on this point. Nowhere does the stipulation of settlement or contract of sale say that the Demty defendants were only required to consider selling the apartment to Nafiew Ahmed once Ahmed Babul dismissed with prejudice the small claims case. The stipulation of settlement explicitly states that DALP was required to give Nafiew Ahmed the opportunity to purchase an apartment. Specifically, the stipulation of settlement provides:

> In consideration by [DALP] offering to [Nafiew Ahmed] an opportunity to
> purchase an apartment [in the building], [Ahmed Babul] hereby agrees to
> voluntarily vacate the judgment against [DALP], and to discontinue this action
> with prejudice, as against [DALP], in full settlement, inclusive of interest and

6

costs, of any and all claims that Ahmed Babul may have, individually or on behalf of any other individual or entity, against [DALP], individually or as guarantor.

The stipulation of settlement continues on to say that "the opportunity for [Nafiew Ahmed] to purchase an apartment [in the building] shall constitute good and sufficient consideration for" Ahmed Babul's agreement to sign stipulations vacating the default judgment entered in the small claims action and dismissing with prejudice the same.

This language dispels any notion that the Demty defendants did not want plaintiffs to purchase an apartment in the building or that their offer to do so was pretextual. Plaintiffs equate "opportunity" with "consideration," but their reading of the stipulation of settlement is wrong. The Demty defendants were required to offer Nafiew Ahmed an apartment for purchase in the building under the terms of the settlement.

This is further supported by the fact that, in addition to the stipulation of settlement, DALP sent to Nafiew Ahmed's attorney a letter enclosing a contract of sale of apartment E-7 for $220,000. The letter explained that its sender was "counsel to the Seller in connection with the sale of the subject premises," that the enclosure was a "proposed contract of sale for the subject matter," and that if the "enclosed document [was] satisfactory, [Nafiew Ahmed's lawyer should] kindly make four copies and return the contracts to the undersigned, together with a down payment check" for $20,000, which was the amount required by the terms of the enclosed contract of sale.

This conduct negates any effect that the subsequent language in the stipulation of settlement that "should the purchase of the apartment fail to be completed or go to closing for any reason, [Ahmed Babul] shall regardless, have no further recourse against DALP" may have otherwise had. Contrary to plaintiffs' argument and the Court's prior reasoning on this issue,

7

this language cannot be viewed in isolation. The Demty defendants extended to plaintiffs – through the contract of sale – a true offer to purchase apartment E-7 for $220,000. Nafiew Ahmed could have accepted that offer by executing the contract of sale and returning with it a contract deposit according to its terms. But legally, the Demty defendants could not have rescinded that offer once it was extended to plaintiffs, unless and until plaintiffs rejected it.

Nafiew Ahmed testified that he signed the contract of sale and sent it to Andrew Roufail, but he never sent the $20,000 contract deposit, as required by the terms of the contract of sale. Thus, even construed in the light most favorable to them, plaintiffs have not met their burden of establishing a prima facie case of discrimination under the FHA. More specifically, as the Demty defendants point out, plaintiffs have not provided any evidence to suggest that Nafiew Ahmed was rejected from purchasing from the Demty defendants apartment E-7. Thus, no reasonable jury could find that the Demty defendant's actions were motivated by discrimination.

It is of no consequence whether Nafiew Ahmed was qualified to purchase the apartment, as plaintiffs claim he was and as the Demty defendants dispute. Plaintiffs must first satisfy all four prongs of the test to establish a prima facie case of discrimination before any burden shifts to the Demty defendants. That plaintiffs can point to material disputes of fact as to some of those prongs is not enough: defendants can succeed on summary judgment if they can show that there are no material disputes of fact as to just one prong of the test, which is what the Demty defendants did here.

The Demty defendants' motion for summary judgment is therefore GRANTED. Their related motion for attorneys' fees, however, is DENIED. Although it is within the Court's discretion to award attorneys' fees to the prevailing party, the Court does not see in this case a reason to disrupt the normal rule that parties pay their own attorneys' fees.

## II.  Senguptas' Motion for Summary Judgment

The Senguptas make two arguments in support of their motion for summary judgment. The first is that because it was Nafiew Ahmed who allegedly sought to purchase apartment D-23 from them, and because there is nothing to suggest that Nafiew Ahmed suffers from a disability or is a member of a protected class, then plaintiffs' discrimination claims cannot stand.  This argument contravenes the plain language of § 3604(f)(1) of the FHA, which prohibits discrimination in the sale of an apartment based on the disability of someone who will reside in the apartment once it is sold, or based on the disability of someone who is associated with the purchaser.  It would be equally as unlawful for the Senguptas to refuse to sell their apartment to Nafiew Ahmed because of his own disability as it would be for the Senguptas to refuse to sell their apartment to Nafiew Ahmed because of his father's disability, especially considering that Nafiew Ahmed intended to purchase the apartment for his father.

The Senguptas' second argument is that plaintiffs failed to establish the fourth prong of their prima facie case for discrimination, because they have not shown any evidence that "an opportunity to buy [apartment D-23] was made available to others and not them."  This argument is based on the four-prong test for a prima facie case of discrimination under the FHA generally, and not the four-prong test for discrimination on the basis of a disability specifically.  In Mitchell, 350 F.3d at 47, the Second Circuit explained that a plaintiff can make out a "prima facie case for housing discrimination" with the fourth prong employed by the Senguptas here, "that the housing opportunity remained available to other renters or purchasers."  But 11 years later, the Second Circuit in Olsen, 759 F.3d at 152, said that "[i]n order to make out a prima facie case of discrimination on the basis of disability in violation of FHA § 3604(f)(1)," the applicable

9

fourth prong of the test is that "the rejection occurred in circumstances giving rise to an inference of discrimination on the basis of the handicap of the person residing or intending to reside with the plaintiff." Because the latter articulation of the fourth prong is more recent than the former, and because it is specific to the subsection of the FHA at issue here, the Court will apply that articulation of the fourth prong here.

That said, the point of the fourth prong under either version of the test is the same – whether there is some evidence to suggest that a plaintiff who might have been rejected from purchasing an apartment was rejected because of their disability – so the Senguptas' citation to a more general version of the standard does not upend their argument. Namely, the goal of the fourth prong seems to be: is there anything in the record to suggest that the defendants' conduct was discriminatory? Here, plaintiffs have cited to no such evidence.[3]

Plaintiffs argue in response that the Senguptas' motion should be denied because the depositions that the Senguptas took of plaintiffs were short, and the Senguptas did not ask plaintiffs any material questions about the Senguptas' alleged discriminatory conduct. This argument misconstrues plaintiffs' burden under the FHA. Plaintiffs must first establish their prima facie case of discrimination before defendants must disprove that case – and defendants certainly do not have to make this prima facie case on plaintiffs' behalf. But plaintiffs failed to take any depositions of the defendants in this case. As a result, it is not surprising that when defendants deposed plaintiffs, defendants did not "proffer any questions about the main allegations in the complaint, including alleged discriminatory animus and discriminatory

---

[3] As the Senguptas point out, plaintiffs have also failed to satisfy the fourth prong of this test under the Mitchell articulation. The Senguptas aver, and plaintiffs have provided no evidence to contest, that apartment D-23 was not made available to other renters or purchasers. Thus, under either version of the test – to the extent there is a meaningful difference – plaintiffs have failed to satisfy their burden to establish a prima facie case of discrimination under the FHA.

statements of their clients." That was plaintiffs' job, which they opted not to do. As defense counsel is obviously aware, a lack of evidence does not hurt them; rather, it hurts the plaintiffs' prima facie case.

Thus, plaintiffs have not supplied any evidence to show that the Senguptas' alleged rejection occurred "in circumstances giving rise to an inference of discrimination on the basis of" Ahmed Babul's handicap. Despite the Court's prior admonitions on this point, plaintiffs still seem to think that the allegations contained in their complaint – here, that the Senguptas discriminated against plaintiffs – are sufficient to raise factual issues at the summary judgment phase. That is, of course, wrong. See St. Pierre v. Dyer, 208 F.3d 394, 404 (2d Cir. 2000).

It does not matter whether Ahmed Babul has any money or whether the Senguptas made a bona fide offer to sell apartment D-23 to plaintiffs. Even viewing both of those factual disputes in the light most favorable to plaintiffs, they have still failed to show that any rejection occurred in circumstances that suggest discriminatory animus.

Finally, plaintiffs argue that the Senguptas' motion should be denied because the Court informed defendants at the most recent status conference that it would deny any motion that was not based on new evidence elicited in the depositions, to avoid a second bite at the apple for defendants. But the core of the Senguptas' motion revolves around conduct that occurred – or rather, did not occur – at the depositions. Namely, plaintiffs' counsel failed to question plaintiffs about the alleged discrimination they faced. Following that failure, the Senguptas could employ the absence of any such evidence in the record in a meaningful way that they could not do before the depositions occurred.

Because plaintiffs have failed to make out a prima facie case of discrimination, the Senguptas' motion for summary judgment is GRANTED.

### III.     Supplemental Jurisdiction

The only claim that remains in this case is against DALP for a breach of the implied warranty of habitability implied into plaintiffs' residential lease under New York State law. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction."

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). Now that all the federal claims have been dismissed, the balance of factors here counsels towards declining to exercise supplemental jurisdiction over plaintiffs' remaining state law claim.

Judicial economy is not saved by having a trial on this lone state law claim in federal court. This is true even though trial is scheduled to begin in the relatively near future. As far as the Court is aware, no party has taken any discovery on this claim. To the extent the parties would like to take this claim to trial right away, plaintiffs can promptly file their complaint in state court and proceed to trial in short order. But to the extent the parties will seek to take additional discovery on this issue – as the Court assumes they will – the parties can more efficiently do so under the auspices of the state court, which is well-versed in these claims.

The convenience to the parties is the same whether the claim is tried in state court or federal court. Indeed, according to the complaint, both parties reside in Queens, New York.

Fairness also counsels towards declining to exercise supplemental jurisdiction because no party has spent a substantial amount of time or money litigating this claim. In fact, it appears

that they have both forgotten about it.  The Demty defendants' motion asks the Court to grant

summary judgment, dismiss the complaint in its entirety, and award them attorneys' fees and

costs as the prevailing party.  Even plaintiffs have failed to point out the viability of their

remaining claim.  It is not the Court's prerogative to remind the parties which claims remain in

their litigation – that is their job.  The parties' failure to acknowledge the existence of the single

state law claim that remains in this case strongly suggests that it would be fair for the Court to

decline jurisdiction to hear it.

And finally, principles of comity counsel towards declining to exercise supplemental

jurisdiction.  A claim for a breach of the implied warranty of habitability is a uniquely state law

claim, which is significantly removed from the federal claims that were the focus of this lawsuit

and which brought the parties into federal court in the first place.  The disposition of the federal

claims has absolutely no effect on the disposition of the state claim, and vice versa.  As a result,

it is more appropriate to try this isolated and smaller state law claim in state court, rather than

federal court.

The Second Circuit has recently addressed the decision of declining to exercise

supplemental jurisdiction under § 1367(c)(3).  In Catzin v. Thank You & Good Luck Corp., 899

F.3d 77 (2d Cir. 2018), the Court found that it was reversible error for the district court to *sua*

*sponte* decline to exercise supplemental jurisdiction over the plaintiff's New York Labor Law

claims in that action after the plaintiffs opted not to pursue at trial their parallel Fair Labor

Standards Act claims.  The district court believed that because the parties' pretrial filings focused

only on the state law claims and omitted the federal claims entirely, the plaintiffs' federal claims

were included in the complaint as a means of manufacturing federal jurisdiction.  The district

court, therefore, *sua sponte* declined to exercise supplemental jurisdiction over the state law

claims under § 1367(c)(3) at the pretrial conference.  Although the Second Circuit noted that

under § 1367(c)(3), "in a great many cases, the evaluation will usually result in the dismissal of

the state-law claims," see id. at 83 (citing Cohill, 484 U.S. at 350 n.7), the district court's *sua*

*sponte* decision declining to exercise supplemental jurisdiction without any notice to the parties

or opportunity for them to be heard was improper.

This case is distinguishable from Catzin, however.  First, it can hardly be said that the

decision not to exercise supplemental jurisdiction was made *sua sponte*, or that the parties have

not had notice or an opportunity to be heard on this issue.  Defendants have previously asked the

Court at least twice (once in the Demty defendant's first motion for summary judgment and once

in the parties' joint pretrial order) to decline to exercise supplemental jurisdiction over the state

law claims, and plaintiffs had an opportunity to be heard on this issue both times.  Second, the

state law claims in this case are entirely distinct from the federal claims in a way that federal and

state labor law claims are not.

Thus, this case is not one that presents circumstances similar to those in Catzin, and the

Court, therefore, declines to exercise supplemental jurisdiction over plaintiff's remaining state

law claim against DALP.

**CONCLUSION**

The Demty defendants' motion for summary judgment [61] is GRANTED, except their

motion for attorneys' fees is DENIED; and the Senguptas' motion for summary judgment [60] is

GRANTED.  The Court declines to exercise supplemental jurisdiction over plaintiffs' state law

claim, which is dismissed without prejudice.

**SO ORDERED.**


_____
U.S.D.J.

 Dated: Brooklyn, New York
      January 2, 2019